**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| BRIAN D. WHITE, | : | Case No. 3:20-cv-284 |
| | : | |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

Plaintiff Brian D. White brings this case challenging the Social Security Administration's denial of his application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. # 15), the Commissioner's Memorandum in Opposition (Doc. #19), Plaintiff's Reply (Doc. # 21), and the administrative record (Doc. # 13).

**I.  Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity."  42 U.S.C. §§ 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on December 29, 2016, alleging disability due to a phobic disorder and depression.  After Plaintiff's application was denied initially and upon reconsideration, he requested and received a video hearing before Administrative Law Judge (ALJ) Laura S. Twilley on January 10, 2019.  Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  She reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 12, 2016 through his date last insured of June 30, 2017. |
| Step 2: | | Through the date last insured, Plaintiff had the following severe impairments:  phobic disorder; dysthymic disorder; major depressive disorder; and generalized anxiety disorder. |
| Step 3: | | Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. |
| Step 4: | | Through his date last insured, his residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "a full range of work at all exertional levels but with the following nonexertional limitations: the [Plaintiff] can understand, remember, and carry out simple tasks and simple instructions in a routine work setting.  He has the ability to adapt to few, if any, changes in work processes and he should have no production rate work or strict production quotas.  He can occasionally interact with coworkers and supervisors.  He should not interact with the general public nor should his work involve tandem or team work.  There should be no over-the-shoulder supervision.  He should perform no outdoor work.  He should not perform work involving exposure to unprotected heights or dangerous moving machinery.  He would be off-task 10% of the workday and miss one day of work a month." |

| | |
|---|---|
| | Through the date last insured, Plaintiff was unable to perform his past relevant work as a custodian, records clerk, or receiving clerk. |
| Step 5: | Through the date last insured, Plaintiff could have performed a significant number of jobs that existed in the national economy. |

(Doc. #13, *PageID* #s 180-89). Based on these findings, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 12, 2016, the alleged onset date, through June 30, 2017, the date last insured. *Id.* at 189.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #13, *PageID* #s 178-89), Plaintiff's Statement of Errors (Doc. #15), and the Commissioner's Memorandum in Opposition (Doc. #19). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a

decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

Plaintiff contends that the ALJ's decision failed to accurately represent the extent of his impairments on his ability to sustain full-time employment or represent the overall essence of the opinion of his treating psychologist, Dr. H. Owen Ward. According to Plaintiff, his phobias combined with his other severe mental impairments would be work preclusive, and the ALJ's failure to address the inconsistencies constitutes reversible error. (Doc. #15, *PageID* #s 839-844). Plaintiff also argues that the ALJ failed to provide sufficient reasons for discrediting the medical source opinions of record. *Id.* at 844-47.

The Commissioner maintains that the ALJ accommodated all of Dr. Ward's opined limitations and appropriately analyzed his subjective symptoms. Additionally, the Commissioner asserts that substantial evidence supports the ALJ's residual functional capacity assessment. (Doc. #19).

#### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citations omitted). The rule is straightforward:

4

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.[2]

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

Plaintiff's treating psychologist, H. Owen Ward, Ph.D., completed mental status and daily activities questionnaires in July 2017. (Doc. #13, *PageID* #s 573-76). He noted that he began

---

[2] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416). Since Plaintiff's application was filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to his claims.

treating Plaintiff in July 2016. He diagnosed phobic disorder and dysthymic disorder. *Id.* at 576. Dr. Ward reported that Plaintiff's treatment includes individual psychotherapy (once a month because Plaintiff cannot afford copays) and psychotropic medication management. *Id.*

Dr. Ward indicated that Plaintiff lives with his wife and mother. *Id.* at 573. He has good relationships with others and has no history of conflict in the workplace. *Id.* He noted that Plaintiff visits his family five to eight times a year, usually around the holidays, for two hours maximum. *Id.*

Dr. Ward indicated that Plaintiff has poor stress tolerance and "strong debilitating phobic [reactions] to storms [and] crowds" causing him to withdrawal. *Id.* at 575. He has "anxiety induced mental inefficiency" as evidenced by his four errors on a serial seven task and two errors on a three-word memory task (with recovery after a hint). *Id.* Additionally, Dr. Ward noted, Plaintiff has "poor judgment associated [with] phobic [reactions] and generalized anxiety affecting treatment – [i.e.] fear of medicine, withdrawal from aggressive people [with] some over [reactions] and self-abusive thoughts to criticism and internalizing anger." *Id.*

Dr. Ward opined that Plaintiff is "somewhat forgetful, may need reminded of details in instructions, and may not understand complex instructions [without] coaching." *Id.* at 576. Plaintiff's ability to maintain attention is affected by his anxiety level, "especially when exposed to storms with lightening." *Id.* He has "limited stress tolerance [with] persistence limits of 20 minutes requiring withdrawal into rest periods." *Id.* Dr. Ward concluded that Plaintiff could perform simple, routine tasks if working alone or around only a few people with access to a supervisor who is helpful and nonaggressive. *Id.* Plaintiff must be sheltered from storms or

crowds. *Id.* Dr. Ward noted that he may need work hardening/conditioning even if he is able to find an ideal job. *Id.*

The ALJ assigned "significant, but not controlling weight" to Dr. Ward's opinions. *Id.* at 186. She discounted his opinion because "[n]ot all of Dr. Ward's opinions are precisely consistent with examination findings, which report [Plaintiff] is social with family members several times a year." *Id.* Nevertheless, the ALJ found that Dr. Ward's opinion was "generally consistent with [Plaintiff's] allegations and examination records from 2016 and 2017 showing a history of phobias and social anxiety." *Id.* Accordingly, she explained, "although not adopted word for word, the essence of his restrictions are incorporated in the above residual functional capacity." *Id.*

The ALJ specifically found that Dr. Ward's opinions are not entitled to controlling weight. However, she did not explicitly address either condition of the treating-physician rule. She discusses inconsistency, but it is not clear if she was addressing the second condition of the treating-physician rule—whether "the opinion 'is not inconsistent with the other substantial evidence in [the] case record'"—or the consistency factor. *Gayheart*, 710 F.3d at 376 (quoting in part 20 C.F.R. § 404.1527(c)(2)); § 404.1527(c)(2). Given that the ALJ found that Dr. Ward's opinion is not "precisely consistent" with examination findings and that the treating-physician rule only requires that the opinion be "not inconsistent" with other substantial evidence, it is likely that the ALJ was discussing this factor. And, if the ALJ was referring to the second condition of the rule, she addressed the treating physician rule at the same time as the factors. This is problematic because the "factors are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart*, 710 F.3d at 376 (citation omitted) (emphasis

7

added).  Either way, the ALJ made no attempt to distinguish between application of the treating physician rule and application of the factors.  The uncertainty of whether the ALJ addressed the conditions of the treating physician rule conflicts with the requirement that the decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. R. 96-2p, 1996 WL 374188, at *5.

Furthermore, there is also some uncertainty surrounding the ALJ's conclusion that Dr. Ward's opinion is not consistent with Plaintiff's visits with his family.  This reason is not "sufficiently specific" to meet the requirements of the treating-physician rule because it fails to identify how Plaintiff's family visits are inconsistent with Dr. Ward's opinion.  *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

Additionally, although the ALJ assigned "significant weight" to Dr. Ward's opinion, the ALJ did not include all of his opined limitations.[3]  For instance, Dr. Ward opined that Plaintiff has persistence limits of 20 minutes requiring withdrawal into rest periods.  The ALJ's residual functional capacity assessment does not account for this limitation, and the ALJ does not explain why she rejected that opinion.  Similarly, Dr. Ward opined that Plaintiff would need a supervisor who is both helpful and nonaggressive.  Neither are incorporated into the ALJ's residual functional capacity assessment.  Instead, the ALJ limited Plaintiff to jobs with no over-the-shoulder supervision and occasional contact with supervisors.  Notably, Dr. Ward indicated that

---

[3] The ALJ also indicated that, although she did not adopt Dr. Ward's opinion exactly, "the essence of his restrictions are incorporated in [Plaintiff's] residual functional capacity."  (Doc. #13, *PageID* #186).  The ALJ is correct that she did not adopt his opinions word for word.  However, it is not clear how she incorporated their "essence."

Plaintiff has anxiety reactions to aggression from supervisors (as well as coworkers and the public) promoting withdrawal and self-abusive thoughts. The ALJ's failure to explain why she did not adopt Dr. Ward's limitations—despite assigning his opinion significant weight—constitutes error. *See Moore v. Colvin*, No. 2:14-CV-455, 2015 WL 5675805, at *7 (S.D. Ohio Sept. 28, 2015) ("The ALJ's MRFC determination is not supported by substantial evidence when he grants significant weight to a medical opinion concerning the claimant's limitations, but then fails, without explanation, to incorporate those limitations into the claimant's MRFC.") (citing *Franklin v. Colvin*, No. 14-1132, 2015 WL 1440931 at *1-3 (D. Kan. March 30, 2015) (holding that the ALJ committed reversible error when he assigned significant weight to the opinion of a non-treating source regarding the plaintiff's limitations, but then, without explanation, failed to incorporate that limitation into the plaintiff's RFC); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio Mar. 11, 2013) (quoting *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010)) ("It is generally recognized that an ALJ may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.")).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4]

B.     **Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).